140 Nev., Advance Opinion 61

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| AMTRUST NORTH AMERICA, INC., Appellant, vs. RAMON VASQUEZ, JR., INDIVIDUALLY, Respondent. | No. 84974 |

**FILED**

SEP 19 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order adjudicating a workers' compensation lien. Eighth Judicial District Court, Clark County; Susan Johnson, Judge.

*Reversed and remanded.*

Hooks Meng & Clement and Shaun R. Meng, Las Vegas,
for Appellant.

GGRM Law Firm and Jason D. Mills, Las Vegas; Naqvi Injury Law and Farhan R. Naqvi, Elizabeth E. Coats, and Paul G. Albright, Las Vegas,
for Respondent.

---

BEFORE THE SUPREME COURT, EN BANC.[1]

*OPINION*

By the Court, LEE, J.:

Workers' compensation serves a vital role in protecting workers by providing financial support to those who suffer injury or death in the

---

[1]The Honorable Linda Marie Bell, Justice, having voluntarily disqualified herself, did not participate in the resolution of this appeal.

24-34570

course and scope of their employment. Understanding the importance of this benefit, the Nevada Legislature enshrined workers' compensation legislation in the early 1900s allowing injured workers to receive financial recovery for medical care as a result of their on-the-job injury without resorting to common-law tort remedies. *See Virden v. Smith*, 46 Nev. 208, 210, 210 P. 129, 129 (1922). However, when a workers' compensation insurer pays benefits to an insured worker, Nevada law allows the insurer to assert an interest against further recovery collected by the worker from a third party. NRS 616C.215(5). Guided by the importance of workers' compensation benefits and the statutory directive to refrain from applying common law principles, we consider the rights of an insurer following a settlement between the insured and a third party. NRS 616A.010.

Appellant AmTrust North America, Inc., a workers' compensation insurer, intervened as subrogee in a third-party lawsuit filed by respondent Ramon Vasquez, Jr., against multiple defendants, in connection with injuries he sustained while in the course and scope of his employment. After years of litigation, Vasquez and the defendants reached a settlement agreement. On a subsequent motion to adjudicate AmTrust's workers' compensation lien based on Vasquez's settlement proceeds, the district court determined that, under *Breen* and *Poremba*, AmTrust was not entitled to recover any portion of the settlement proceeds despite its lien.[2]

We issue this opinion to reconcile the conflict between our caselaw and NRS 616C.215(5), the statute that controls a workers' compensation insurer's lien rights. Namely, we hold that (1) there is no requirement that an insurer intervene or otherwise participate in the

---

[2]*Breen v. Caesars Palace*, 102 Nev. 79, 715 P.2d 1070 (1986); *Poremba v. S. Nev. Paving*, 133 Nev. 12, 388 P.3d 232 (2017).

injured worker's third-party claim to recover on its lien under NRS 616C.215(5); (2) the *Breen* formula, created in direct conflict with the controlling statute, has proven unworkable and is therefore abandoned in favor of a straightforward lien analysis, under which the insurer's lien applies to recovery from any third parties for the covered injuries without an allocation of the injured employee's litigation fees and costs; and (3) in contradiction of our holding in *Poremba*, NRS 616C.215(5) mandates that an insurer collect from the "total proceeds" of any recovery of an injured worker, including any portion allocated to noneconomic injuries. We therefore overrule those portions of *Breen* and *Poremba* that are inconsistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

While working in a restaurant, Vasquez slipped in a puddle of liquid and sustained injuries. Shortly thereafter, he filed a workers' compensation claim, which AmTrust accepted. AmTrust paid workers' compensation benefits for medical expenses, missed wages, permanent disability, and vocational rehabilitation, totaling $177,335.59.

Subsequently, Vasquez initiated third-party litigation against several defendants, asserting multiple claims related to his workplace injuries. AmTrust intervened as subrogee and also filed claims against the third-party defendants. After nearly two years of litigation, Vasquez and the third-party defendants reached a $400,000 settlement. Without input from AmTrust, Vasquez and the third-party defendants allocated the settlement as follows: $83,577.22 in special damages (past medical) and $316,422.78 in general damages (noneconomic damages, namely, pain and suffering). After Vasquez's costs and attorney fees were subtracted from the settlement amount, Vasquez was left with a net recovery of $193,706.71. At the time of the settlement, AmTrust had expended over $50,000 in costs

SUPREME COURT
OF
NEVADA

(O) 1947A

3

and fees. Following the settlement, Vasquez filed a motion to adjudicate the workers' compensation lien and argued that AmTrust was entitled to none of the settlement proceeds or, at most, $83,577.82, pursuant to *Breen* and *Poremba*.

After holding a hearing on the motion, the district court found that, although AmTrust intervened, it did not meaningfully participate in the third-party litigation and therefore was required to bear a portion of the third-party litigation costs and fees pursuant to *Breen*. The district court also held that AmTrust could not recover from the portion of the settlement designated to compensate Vasquez for noneconomic damages, pursuant to *Poremba*.

Without providing a mathematical calculation, the district court found that AmTrust was not entitled to any recovery on its lien. The district court stated that, "notwithstanding the application of *Poremba*, AmTrust's proportionate share of the litigation expenses in obtaining the [s]ettlement exceeds" its lien "under any application of the *Breen* formula in this matter." Put another way, the application of the *Breen* formula resulted in AmTrust owing money for litigation expenses in an amount greater than its lien. Accordingly, the district court granted Vasquez's motion, adjudicating the lien on the settlement proceeds at $0, and dismissed AmTrust's complaint. AmTrust now appeals.

*DISCUSSION*

AmTrust challenges the district court's application of *Breen* and *Poremba*. We review the application of caselaw de novo. *Las Vegas Metro. Police Dep't v. Blackjack Bonding, Inc.*, 131 Nev. 80, 85, 343 P.3d 608, 612 (2015). In considering the district court's application of the two cases, it is evident that *Breen* and *Poremba* conflict with the plain language of NRS 616C.215(5). It is also clear that the formula set forth in *Breen* is

unworkable. Based on these observations, we are compelled to overrule those portions of *Breen* and *Poremba* that are inconsistent with this opinion and reverse the district court's order adjudicating AmTrust's lien.

*Legal standard*

"[U]nder the doctrine of stare decisis, we will not overturn [precedent] absent compelling reasons for so doing." *Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008) (footnote omitted). Rigid adherence to stare decisis is the preferred course of action because it "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). However, the doctrine of stare decisis should not be so rigidly applied that the court avoids revisiting its prior decisions, especially where it appears that a prior decision runs contrary to the plain language of a statute. *See Rupert v. Stienne*, 90 Nev. 397, 400, 528 P.2d 1013, 1015 (1974) ("The doctrine of stare decisis must not be so narrowly pursued that the . . . law is forever encased in a straight jacket."). Precedent should be overruled where it is proven "unworkable" or "badly reasoned." *State v. Lloyd*, 129 Nev. 739, 750, 312 P.3d 467, 474 (2013) (internal quotation marks omitted).

*We overrule* Breen *to the extent it conflicts with this opinion*

In *Breen*, an employee was injured in the course of his employment and was taken to a hospital, where he later died. *Breen v. Caesars Palace*, 102 Nev. 79, 80, 715 P.2d 1070, 1071 (1986). Because the employee's work-related injuries were apparently nonfatal, the employee's family filed a complaint against the treating physician and the hospital, alleging medical malpractice. *Id.* Two years after the employee's death, and just weeks before the family reached a $1,000,000 settlement with the

physician and the hospital, Caesars intervened and filed a subrogation lien against the prospective settlement. *Id.* At the time of the settlement, Caesars had paid $39,728.16 in benefits and had reserved $650,000 as future pension benefits. *Id.* at 81, 715 P.2d at 1071. Subsequently, the employee's family used the settlement proceeds to reimburse Caesars for the paid benefits, and Caesars stopped paying pension benefits, claiming an offset. *Id.*

The employee's family challenged Caesars' interest in the settlement proceeds before a Department of Administration hearing officer. *Id.* The hearing officer, an appeals officer, and the district court all concluded that, pursuant to NRS 616C.215, then codified as NRS 616.560,[3] Caesars was entitled to assert a lien against the settlement proceeds. *Id.*

On appeal, this court held that insurers, to avoid any unjust enrichment, may be charged with a proportionate share of third-party litigation expenses when they fail to timely intervene in the insured's third-party action. *Id.* at 85, 715 P.2d at 1074. In other words, *Breen* held that a lienholder is subject to a reduction of its lien when it refuses to exercise its independent right to pursue a cause of action against responsible third parties.

The *Breen* court determined that while NRS 616C.215 made clear that Caesars was entitled to assess its lien against the *total* settlement proceeds, the statute left open the equitable issue regarding the allocation of fees and costs between the insured and the insurer underlying the third-party settlement. *Breen*, 102 Nev. at 84, 715 P.2d at 1073. To address this

---

[3]At the time of *Breen*, NRS 616C.215 was codified as NRS 616.560 (substituted 1995). *Breen*, 102 Nev. at 81 n.1, 715 P.2d at 1071 n.1. The minor differences between NRS 616C.215 and NRS 616.560 have no effect on our analysis or conclusion in this opinion.

 

perceived statutory deficiency, the *Breen* court looked to other states for guidance. *Id.* at 84, 715 P.2d at 1073-74. In doing so, the court considered principles of fundamental fairness and unjust enrichment to conclude that an insurer must bear a portion of the fees and costs incurred by the insured. In furtherance of promoting the same, the court devised a formula designed to balance the injured worker's efforts in obtaining a third-party judgment to compensate for his injuries and the insurer's right to subrogation. Consequently, the formula devised by the court to determine an insurer's proportionate share of the fees and costs is as follows:

$$\text{Insurer's share} = \frac{\text{Total amount of lien}}{\text{Settlement minus fees and costs}}$$

$$\text{Insured's share} = \frac{\text{Excess recovery}}{\text{Settlement minus fees and costs}}$$

*Id.* at 85, 715 P.2d at 1074.

Now, some decades later, time-tested application of the *Breen* formula has proven to be unworkable. For this reason, in addition to the *Breen* court's deviation from NRS 616C.215, as addressed more fully below, we are compelled to overrule *Breen* to the extent that it conflicts with this opinion.

*Breen conflicts with NRS 616C.215 because the statute does not require insurers to bear a portion of the injured worker's third-party litigation expenses*

While courts are often endowed with broad equity powers, workers' compensation is a creature of statute. Accordingly, "[a]ny changes in the workers' compensation program must come from the legislature, not the courts." 82 Am. Jur. 2d *Workers' Compensation* § 3 (2013).

Under NRS 616C.215(5) "[i]n any case where the insurer . . . is subrogated to the rights of the injured employee . . . the insurer . . . has a lien upon the total proceeds of any recovery from some person other than the employer, whether the proceeds of such recovery are by way of judgment, settlement or otherwise." Although the *Breen* court correctly concluded that insurers are entitled to assess the total proceeds of third-party recoveries, meaning proceeds designated to compensate for both economic and noneconomic loss, nothing on the face of the statute requires insurers to bear a portion of the costs and fees incurred by an insured during third-party litigation. We recognize *Breen*'s well-intentioned attempt to mimic the equitable approaches taken by sister states; however, in the context of the workers' compensation statutory scheme, this was inappropriate. *See In re Fontainebleau Las Vegas Holdings*, 128 Nev. 556, 569, 289 P.3d 1199, 1212 (2012) (explaining that principles of equity cannot overcome statutory provisions). As neither NRS 616C.215(5) nor any other provision in the workers' compensation statutory scheme requires an insurer to monetarily contribute to third-party litigation before assessing its lien, we conclude that *Breen* was thus wrongly decided.

*The* Breen *formula is unworkable and is therefore abandoned*

In addition to violating the plain language of NRS 616C.215(5), the *Breen* formula has proven unworkable both in its application and purpose. *Breen* emphasized that the proffered formula was designed to

safeguard principles of fundamental fairness and equity. *Breen*, 102 Nev. at 84-85, 715 P.2d at 1073-74 (indicating that principles of equity, fairness, and justice should be considered when allocating litigation costs) (citing *Sec. Ins. Co. of Hartford v. Norris*, 439 S.W.2d 68, 70 (Ky. 1969)). Specifically, the formula was intended to prevent an insurer from being unjustly enriched. *Id.* at 85, 715 P.2d at 1074.

Mathematically, the *Breen* formula was intended to split litigation costs and fees between the insurer and the insured in a manner that, in accordance with fundamental principles of fairness, led to recovery for both parties. Here, the *Breen* formula failed to provide a net positive recovery for AmTrust, demonstrating that it is mathematically flawed and unworkable. AmTrust paid Vasquez $177,335.59 in workers' compensation benefits and Vasquez subsequently received a $400,000 gross settlement. While the district court failed to perform the math, instead summarily opining that AmTrust would not be entitled to recovery under any application of the formula, were the district court to have performed the math, it would have likely performed the following calculations:

$$\text{AmTrust's share} = \frac{\$177{,}335.59 \ (\text{AmTrust lien})}{\$193{,}706.71 \ (\text{Settlement minus fees and cost})} = .915$$

$$\text{Vasquez's share} = \frac{\$16{,}371.12 \ (\text{Net settlement minus lien})}{\$193{,}706.71 \ (\text{Settlement minus fees and cost})} = .085$$

SUPREME COURT
OF
NEVADA

(O) 1947A

9

Under the formula, AmTrust's share of the third-party litigation costs and fees would be $188,858.42, which exceeds the sum it paid to Vasquez in workers' compensation benefits. This is also after AmTrust expended in excess of $50,000 in its own fees and costs to represent its interests in its subrogation claim. Ironically, and contrary to its intended equitable design, the *Breen* formula results in a net *negative* recovery for AmTrust. The formula further results in a double recovery for Vasquez, as he initially received workers' compensation payments in the sum of $177,335.59 and was then further able to recover a gross sum of $400,000 for the same injuries. This is an unintended result of a fundamentally flawed formula.[4]

Concurrent with its mathematical defects, the *Breen* formula has also been proven unworkable because the broad grant of discretion has led to inconsistent results. For instance, while we have indicated that the *Breen* formula does not apply where an insurer timely intervenes, *see generally Breen*, 102 Nev. 79, 715 P.2d 1070, or where an insurer "expend[s] its own monies and efforts to obtain an adequate settlement or judgment," *State Indus. Ins. Sys. v. Eighth Jud. Dist. Ct.*, 111 Nev. 28, 33, 888 P.2d 911, 914 (1995), *overruled on other grounds by Am. Home Assurance Co. v. Eighth Jud. Dist. Ct.*, 122 Nev. 1229, 147 P.3d 1120 (2006), recent interpretations of our directives have so evolved that some district courts, including this one, now require that the insurer not only intervene early and expend its own fees in prosecution of its subrogated claims, but that the insurer's participation also be "meaningful." Reverting to the plain language of the statute will remove the ever-evolving and inconsistent

---

[4]This result also contravenes NRS 616C.215's prohibition against double recovery for an insured.

application of *Breen*, as it simply allows insurers to assert a lien upon the total proceeds of the injured worker's claim.

Here, AmTrust quickly intervened and participated in depositions, motions, and discovery. Reflective of these efforts, AmTrust expended over $50,000. Deeming these efforts to not be "meaningful," the district court subjected AmTrust's lien recovery to the formula articulated in *Breen*, which resulted in a net zero recovery for AmTrust. This result is both unfair and inequitable as it not only deprived AmTrust of the amount it paid to Vasquez, but further forced AmTrust to absorb the $50,000 it expended during the third-party litigation.

As the *Breen* formula has proven unworkable, it must be abandoned. The well-intended formula was designed to apportion litigation costs and fees between the insurer and insured in the name of fairness and equity. The unintended consequence, however, can result in the divestment of the insurer's statutory lien in favor of providing an insured with double recovery, as was the case here. Given the unworkable nature of the *Breen* formula, triggered by an insurer's failure to timely intervene in the insured's third-party litigation, continued reliance on the same is not warranted.

*Insurers may collect from the "total proceeds" of any recovery by an injured worker*

Having determined that *Breen* set forth an unworkable standard and departed from the plain language of the controlling statute, we turn our attention to *Poremba* and find a similar flaw.

Three decades after *Breen*, in *Poremba v. Southern Nevada Paving*, an injured employee opened a workers' compensation claim that the insurer accepted and later closed. 133 Nev. 12, 14, 388 P.3d 232, 234-35 (2017). The employee filed a tort claim and received a settlement designed to compensate for economic and noneconomic damages. *Id.* at 14, 388 P.3d

at 235. After receiving the settlement, the employee requested to reopen his workers' compensation claim under NRS 616C.390, but the insurer denied the request, claiming an offset based on the third-party settlement. *Id.* at 14-15, 330 P.3d at 235.

In addressing whether settlement funds designated to compensate for noneconomic damages are assessable by an insurer, the *Poremba* court held that insurers may only assess settlement funds designated to compensate for expenses within NRS 616A.090's definition of compensation, not the total settlement proceeds. *Id.* at 18, 388 P.3d at 238. In reaching this holding, *Poremba* did not reference NRS 616C.215 or *Breen*, both of which indicate that an insurer's lien applies to the *total* settlement proceeds, not just those proceeds designated to compensate for expenses covered by NRS 616A.090. Thus, *Poremba*'s limitation stands in direct conflict with both precedent and the plain language of the controlling statute.[5]

As demonstrated by the instant case, *Poremba* has left courts confused. Under *Poremba*, uncertainty as to when an insurer may assess the total proceeds of a third-party settlement and when an insurer may only assess the settlement portion designated to compensate for expenses covered by NRS 616A.090 has loomed in lower courts. We now clarify that an insurer may assess the total proceeds of a third-party settlement, even where the matter is reopened pursuant to NRS 616C.390 and irrespective of whether the proceeds are designated as economic or noneconomic in nature.

---

[5]We also note our concern that under *Poremba*'s distinction between economic and noneconomic damages, litigants could be motivated to structure settlements in a manner that would unjustly minimize an insurer's statutory lien.

Based on the above-recognized errors in *Breen* and *Poremba*, we conclude that strict adherence to these precedents is not warranted. We therefore overrule *Breen* and *Poremba* to the extent that they conflict with NRS 616C.215(5) and this opinion. Litigants and courts should now rely wholly upon NRS 616C.215(5) and applicable surrounding statutes when adjudicating workers' compensation liens. With this course correction, we return the issue of regulating workers' compensation liens to the Legislature. *Cf. Moranz v. Harbor Mall, LLC*, 502 P.3d 488, 500-01 (Haw. 2022) (applying a statute requiring insurers to bear a pro-rata share of the third-party litigation costs and fees); *Knapp v. Tenn. Gas Pipeline Co.*, 829 A.2d 1052, 1053 (N.H. 2003) (applying a statute requiring courts to divide third-party litigation costs and fees as "justice may require"); *Jones v. Pringle & Herigstad, P.C.*, 546 N.W.2d 837, 840-41 (N.D. 1996) (applying a statute outlining the percentage-based distribution of third-party settlement funds).[6]

## CONCLUSION

When a workers' compensation insurer pays benefits to an insured, NRS 616C.215(5) provides that the insurer has a lien against the total proceeds of any recovery the insured may collect from a third party. In *Breen* and *Poremba*, we deviated from the plain language of the statute, and we now correct course by overruling the portions of those cases

---

[6]AmTrust also argues that the district court erred when it dismissed its complaint against the aforementioned third-party defendants; however, as the third-party defendants are not parties to the instant appeal, we do not address this contention.

SUPREME COURT
OF
NEVADA

(O) 1947A

inconsistent with the statute. We therefore reverse the district court's order adjudicating the workers' compensation lien and remand the case for further proceedings consistent with this opinion.

                                                                  , J.
Lee

We concur:

_____, C.J.
Cadish

_____, J.
Stiglich

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Parraguirre